**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| **SAFETY VISION, LLC** § § *Plaintiff* § § VS. § § **HILLSBOROUGH AREA REGIONAL TRANSIT AUTHORITY** § § § § *Defendant* § § | CIVIL ACTION NO. _____ JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT, APPLICATION FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff, **SAFETY VISION, LLC** files this Original Complaint and Application for Injunctive Relief complaining of Defendant, **HART AREA REGIONAL TRANSIT AUTHORITY ("HART")**, a governmental entity, and in support thereof would respectfully represent unto the Court as follows:

## I.

## PARTIES

1. Plaintiff, **Safety Vision, LLC** ("SV") is a Texas limited liability company which maintains its principal office and place of business at 6100 Sam Houston Parkway North, Houston, Harris County, Texas. The sole member of the LLC is Bruce H. Smith whose place of residence and citizenship is 835 Echo Lane, Houston, Harris County, Texas.

2. Defendant**, Hillsborough Area Regional Transit Authority** (HART) is a governmental organization formed pursuant to the Regional Transportation Authority Law, Ch. 163.565 et seq Florida Statutes, and was created as a legal entity in 1979 to be the regional mobility provider to plan, operate and maintain public transit facilities in Hillsborough County,

Florida serving the residents in the cities of Tampa, Temple Terrace, and parts of unincorporated Hillsborough County.

3. HART may be served with process by delivering a copy of the summons and of the Complaint to its chief executive officer "(CEO" or "Interim CEO"), Carolyn House Stewart, at HART's designated business address at 1201 E. 7th Avenue, Tampa, Hillsborough County, Florida. Alternatively, HART may be served with process at that address by registered mail or certified mail, return receipt requested, delivery restricted to addressee or upon such other authorized person of HART.

4. The claims asserted herein are out of business done by HART in the State of Florida. HART signed the Agreement (that is the subject of this suit) in Florida, and the parties contemplated that the services and goods delivered by Plaintiff would be performable and, in fact, were performed in Florida.

## II.

### JURISDICTION

5. Based on the facts herein alleged, which are incorporated herein by reference, jurisdiction is proper based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332 as this suit is between a Texas citizen [Safety Vision ] and a citizen of Florida [HART]. This Court has jurisdiction over this controversy the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

6. The claims asserted herein are out of business done by HART in the State of Florida. HART signed the Agreement (that is the subject of this suit) in Florida, and the parties contemplated that the services and goods delivered by Plaintiff would be performable and, in fact, were performed in Florida.

### III.

### VENUE

7. Based on the facts herein alleged, venue is proper in the Middle District of Florida as the Agreement which is the subject of the lawsuit was also made, executed and performable, in part, in Tampa, Hillsborough County, Florida and the dispute involves the enforceability of the terms, conditions and other provisions of said Agreement.

8. As alleged above, venue is also proper in this district as SV and HART specifically agreed and stipulated that courts of competent jurisdiction sitting in Hillsborough County, Florida have exclusive venue for all legal actions under or in any way relating to said Agreement. [1]

### IV.

### EXHAUSTION OF REMEDIES

9. Pursuant to the terms of the contract between the parties, SV has pursued and exhausted all administrative remedies prior to bringing this lawsuit.

### V.

### BACKGROUND FACTS

10. This lawsuit is about enforcing an Agreement ("Agreement" or "Contract") dated January 7, 2019 incorporated herein by reference and is internally identified as VC00000781-*Transit Vehicle Camera System*; the identification of the solicitation for bids by HART leading up to the Contract is IFB-33201, dated October 19, 2018.

11. The Contract was awarded to SV to provide equipment and installation of digital security cameras and recording devices in more than 280 HART owned public transport vehicles. The firm/fixed contract price as agreed upon in the Contract, as modified, was $ 1,303,485.02.

---

[1] *See,* Agreement, Exhibit F, paragraph 25 (b)

12. SV is a company engaged in the business for the sale of mobile video surveillance, fleet and information management solutions for mass transit, school transportation, law enforcement and other related industries.

13. SV markets, distributes, installs, services and sales a broad range of vision monitoring systems for commercial, public and private vehicles, including but not limited to mobile video products used to view, over closed-circuit monitors and wireless transmission, activities in and around the usage of transport vehicles, and products and services related thereto.

14. In connection with its core business, SV provides hardware and software solutions for these products and equipment to its customers, and as a component thereof, promotes strategic placement and sales of its products in certain specialized markets and venues, directly or with other product lines.

15. SV has been in the business of promoting and selling multiple product lines as an independent sales representative and distributor of mobile cameras and surveillance systems dating back to 1993, and has developed customer relationships on a national and international scale dating back 27 years, long before the Agreement that is the subject of this lawsuit was entered into in 2019.

16. Prior to the written Agreement, Defendant HART issued the solicitation request for bids dated October 19, 2018 which included written specifications for the equipment, as follows:

- *"Recording capacity shall have a minimum of 30 frames per second from a maximum of twelve (12) color video cameras."*

- *"Recording Time shall have a minimum of 30 days or up to 720 hours."*

- *"All cameras proposed must have a HD 720P resolution or better."*

These same specifications were likewise detailed in the Contract.

17. The lawsuit is necessitated as a result of the sudden, unilateral action by HART on November 1, 2019 when it wrongfully sought to "terminate" the Agreement by nakedly asserting in a letter to SV an unspecified "default". This letter notice was several months after full performance of the Agreement by SV and acceptance of HART, and after more than 90 days of failing to pay the amount owed (under the firm/fixed contract price set forth in the Agreement) in the sum of at least $ 826,932, the balance due and owing prior to November 1, 2019.

18. Under Exhibit F, subparagraph 19(b) of the Agreement, the grounds for Termination for Default provision expressly states:

> "(b) Termination for Default: If the Contractor does not deliver supplies in accordance with the contract delivery schedule, or, if the contract is for services, the Contractor fails to perform in the manner called for in the contract, or if the Contractor fails to comply with any other provisions of the contract, the Hillsborough Transit Authority may terminate this contract for default. **Termination shall be effected by serving a notice of termination on the contractor setting forth the manner in which the Contractor is in default.** The contractor will only be paid the contract price for supplies delivered and accepted, or services performed in accordance with the manner of performance set forth in the contract. If the Contractor defaults in performance of this contract HART has the right to withhold the disputed amounts."

19. HART did not and has not complied with the above subparagraph 19 (b). There is no question or dispute by HART that the supplies (camera equipment and recorders) were delivered by SV in accordance with the contract delivery schedule. Further, there is no question or dispute by HART that the services (installation) was performed in the manner called for in the contract, and there is no question or dispute that HART did not specify or designate any material provision of the contract that SV failed to comply with. In a word, no basis or grounds for termination for default existed as of November 1, 2019, and clearly HART could not and did not set forth the manner in which SV was in "default".

20. Under Florida's Uniform Commercial Code, ¶ 672.607, ("UCC") HART is obligated to pay the full balance for the goods it has accepted, and HART is further precluded from rejection of the goods accepted, and such acceptance cannot be revoked.

21. The November 1, 2019 letter from HART wrongfully asserted that SV was in "default". Despite immediate written request from SV, HART did not withdraw said unsupported proclamation, nor has it at any time specified in writing the alleged "default" as required in paragraph 19 (b) of Exhibit F under the Contract and as required by the UCC.

22. Prior to November 1, 2019, SV fully and completely delivered and installed the "services" and "supplies" as those terms are defined in the Contract, i.e. provide equipment and installation of digital security camera and recorders in approximately 280 HART owned vehicles[2]. The items provided by SV and accepted by HART clearly conformed to the requirements of the solicitation IFB-33201 as set forth in paragraph 17 above, and the same specifications in the corresponding Contract. In fact, HART determined the technical acceptability of the equipment prior to and following installation of the equipment and at all times had ample opportunity to do so.

23. Following installation and full operation of the equipment, HART did not reject the equipment for it being non-conforming. Instead, HART continued its full utilization of all the installed and operating equipment for several months (prior to November 1, 2019) without payment of the outstanding amount owed to SV.

24. Following substantial completion of the Contract as scheduled, SV invoiced HART on June 19, 2019, and the full amount of the amount due under said invoice in the sum of $476,553.01 was paid by HART, without reservation or protest, in full on or before June 30, 2019. Again, HART accepted the goods and services as delivered and performed by SV.

---

[2] The vehicles consisted of buses (fixed rate vehicles), paratransit vehicles and street cars.

25. SV has been seriously aggrieved as a result of HART's refusal and failure to pay the sums past due and owing as set forth above. HART had accepted the services and supplies during the period of installation of the equipment on more than 280 vehicles, beginning in April 2019 to substantial completion in June 2019. HART continues to fully use and enjoy those services and supplies on an ongoing daily basis without material interruption, yet also without payment of the remaining sums owed to SV as agreed upon.

26. Documents to substantiate the basis or ground for the contractual amount due and owing include but are not limited to the documents in the possession of HART such as the solicitation bid and Contract, the numerous acceptance installation forms signed by HART, letters confirming that the equipment had been installed and operating, that the ancillary services and supplies had been completed, and other like documents in the possession of HART. Further, video and audio recordings in the possession of HART, including at least 5 actual events and occurrences involving criminal activity occurring on or about the vehicles after May 1, 2019 but prior to November 1, 2019, likewise demonstrate and substantiate HART's full use and enjoyment of the equipment.

27. In addition, SV's attorney sent a letter dated November 8, 2019 to HART, a copy of which is attached hereto as <u>Exhibit A</u>, to which HART did not reply. This letter was in reply to HART's November 1, 2019 letter thereby providing HART an opportunity to abide by the Contract. Again, HART chose not to do so.

28. Further, following HART's November 1, 2019 termination letter, HART did not return the equipment to SV. Instead, HART's unequivocal acceptance has continued to the present by maintaining its possession and use and claiming its ownership of the equipment without payment for the equipment. In short, there has been no revocation of acceptance by

HART. At no time after November 1, 2019 has HART given any written notice to SV and has not at any time given notice of revocation of its acceptance. Stated simply, revocation does not exist as a matter of law.

29. Without a reply from HART, SV was left no choice but to follow the inept written procedures under the Contract as written by HART and protect its rights by initiating a "claim or dispute" to the Contracting Officer, the first step in a flawed administrative process. SV did so by its letters to HART's Contracting Officer of the Procurement Department, John Edmondson, dated November 13, 19 and 20, 2019. Following said letters, HART refused to conduct the administrative process in accordance with its terms; instead, HART engaged an outside attorney to act as the "Contracting Officer", (not an employee of HART and not from Procurement) which it was not authorized to do. This third party outside attorney was not, by definition, the "Contracting Officer" of HART per the written terms of the Contract

30. The Contract says "all claims or disputes by a Contractor …shall be submitted in writing to the designated Contracting Officer of the Procurement Department for a determination". *See,* Contract, Exhibit F, § 20 (a). The term "Contracting Officer" is defined in the Contract as the person executing the Contract on behalf of the Authority or his duly appointed successor.  This outside attorney did not sign the Contract on behalf of HART, nor was he the duly appointed successor of the person who did sign the Contract.

31. Thereafter, this outside attorney (<u>un</u>authorized Contracting Officer) conducted a hearing on February 5, 2020 almost 3 months after the notice of the claim, and then issued a "decision" on or about March 14, 2020.  This decision was a nullity as it was not in accordance with the Contract; the Decision was completely without validity, force or effect in resolving the

contract dispute presented, and yet, the process of protecting its rights was at great cost and expense to SV, and caused a delay of several months.

33. Following this so called administrative process 1st step, SV was required under the Contract, to take administrative step 2, and immediately commence an appeal within 5 days of the 1st "decision" to the CEO of HART[3], who was, under the terms of the Contract, to review the decision. Instead, HART, after several more weeks of delay, engaged another outside attorney to hear this 2nd phase of the administrative process. This person was likewise not authorized under the Contract to do the function of the CEO. Yet, more than 2 months after that hearing held on July 24, 2020, a decision was issued on October 1, 2020 that noted, in part, that a significant part of the first attorney's decision was unquestionably erroneous under the facts and the law. In short, the administrative process as insisted upon by HART did not result in a resolution of the dispute.

33. Based on the foregoing, SV has exhausted its contractual administrative remedies under the Agreement.

34. In spite of its written contractual obligation to perform the Agreement and pay the contract price as agreed upon, and even following the futile exhaustion of administrative remedies, HART continues to keep and use the equipment yet refuse to honor the Contract. Even more so now the elapsed time since November 1, 2019 underscores that HART accepted the goods and did not (and has not) returned any of the goods to SV. In addition, HART, despite written protest by SV, insisted on SV complying with the flawed administrative process for review of HART's egregious acts, yet HART itself did not comply with the purpose and intent of the administrative process.

---

[3] By this date, HART had designated Carolyn House Stewart, as its interim CEO, following the abrupt resignation of Benjamin Limmer, who had signed the Contract Modifications in May and June 2019.

35. Upon information and belief, SV would show HART embarked on the foregoing course of action for purposes of delay only, to wrongfully exercise dominion and control of the equipment, and to exhaust SV at great cost and expense to SV without any intent on its part to perform the Contract in accordance with its express terms and provisions and applicable law. HART's actions have caused and will continue to cause irreparable harm. Accordingly, SV is compelled to institute the present proceeding and obtain legal and equitable relief to preserve the status-quo as existed between the parties as of November 1, 2019, pending judicial resolution of the issues presented herein.

36. The Agreement contains several provisions which are enforceable as a matter of law as sales of goods are governed in Florida by the UCC. The UCC has specific rules on how goods are deemed accepted by a buyer. Once the goods are accepted, the buyer must pay the contract rate for the goods accepted, *See* UCC 672.606. In addition, the Contract [4] expressly excluded any implied warranty for fitness. *See*, UCC 672.316.

37. HART, knew at the time of the Agreement, and all times since then, that the Agreement was enforceable when made and continues to be enforceable despite HART's efforts to fabricate a "termination", and then force SV to initiate a "dispute" or "claim" under paragraphs 20 and 21 of Exhibit F of the Contract because of HART's refusal to pay the contract balance.

---

[4] See, Exhibit D, paragraph 4: All implied warranties of merchantability and "fitness for a particular purpose" are excluded from any obligation contained in this contract.

# V.

# CAUSES OF ACTION

As to each cause of action set forth below, SV incorporates herein the allegations contained in paragraphs 1 through 37 above.

## Count One

## Breach of Contract

38. Without waiving its right to equitable relief, SV would show that HART has breached the Agreement by failing and refusing to honor the material terms of the Agreement, including but not limited to performance of its written terms for notices, termination, warranties and the like. HART did not have any grounds to "terminate" the Contract on November 1, 2019 for "default" after SV's full performance of it as there were no facts or basis that SV had "defaulted". Therefore, HART's notice of termination is invalid and of no force or effect. As a result of such breach, SV has sustained and will sustain in the future actual, incidental and consequential damages in excess of the minimum jurisdictional limits of the Court, for which amount it herein sues.

## Count Two

## Unjust Enrichment

39. Pleading in the alternative, and without waiving any count as alleged herein, Plaintiff asserts a claim for unjust enrichment. Plaintiff provided the goods and services to Defendant, and Defendant knew the goods and services were provided for compensation; however, unknown to Plaintiff, Defendant intended to avoid payment for the services by intentionally or knowingly securing Plaintiff's continued ongoing performance of the services and delivery of the goods by deception, threats or false token or intentionally or knowingly

securing SV's ongoing performance of the services and delivery of the goods by agreeing to provide compensation and, after the services were rendered and goods delivered, refused and failed to make payment after receiving notice demanding payment. As a result of the foregoing, Plaintiff has sustained actual damages in the sum of at least $ 826,932, exclusive of interest, statutory damages, incidental and consequential damages and attorney fees.

40. As alleged above, the facts support the elements of a claim for unjust enrichment because (1) a benefit was conferred upon Defendant by the Plaintiff, (2) Defendant has fully appreciated the benefit, and (3) the Defendant's acceptance and retention of the benefit under circumstances that make it inequitable for it to retain it without paying the full agreed price thereof.

## Count Three

### Accounting

41. SV demands a full accounting of all video and audio recordings of HART attributable, directly or indirectly, to the ongoing use and enjoyment made by HART of the equipment or those working in concert with it since at least May 1, 2019, including at least 5 instances prior to November 1, 2019 where HART captured images of persons presumably in the act of committing crimes in or about the vehicles upon which SV equipment was installed. Despite repeated written request, HART has refused to produce such recordings to SV.

42. Further, SV further requests that the Court order HART to immediately produce its books and records of accounts, and notes of any meetings and all other documents evidencing agreements with third parties for the purchase or potential purchase of any product lines and equipment that are the same or similar to SV product lines and equipment as installed on the HART vehicles as set forth in the Agreement, particularly any such documents showing

proposals or bids by HART on such product lines and equipment since at least November 2019, and proposed or actual contracts with others during the same time frame.

### Count Four

### Declaratory Judgment

43. To the extent it becomes necessary to give full effect to the Agreement, SV would show that it is interested under a written contract or other writings constituting a contract (*i.e.*, the Agreement); or whose rights, status or other legal relationships are affected by a contract (*i.e.*, the Agreement); and that a justiciable controversy exists between the parties which can be resolved via a declaratory judgment. Accordingly, SV is entitled to declaratory relief under the Declaratory Judgments Act and seeks a declaration as to the parties' rights, status or other legal relationships arising under the Agreement, including, *inter alia*, the enforceability of the Agreement in accordance with its terms and applicable law.

*(Injunction Relief under Rule 65)*

**(i) Request for Temporary Injunction**

44. As shown above, SV has clearly demonstrated a likelihood of success on the merits of its claims against HART. The balance of equities between SV versus HART favors the issuance of injunctive relief because to not issue injunctive relief would, in effect, sanction HART's ongoing wrongful conduct and would irreparably damage SV by allowing HART to unilaterally continue to violate the Agreement and impermissibly permit HART to continue the full use and benefit of the goods without payment as agreed upon.

45. A temporary injunction order against HART needs to be granted immediately to avoid further irreparable harm to Plaintiff. SV must protect the continued viability and effectiveness of the audio and video recordings that HART has made, stored and used; if the

equipment and recordings are not properly handled (if improperly or negligently removed from the vehicles by HART or its agents), SV will be irreparably harmed. Both the quality and functionality of SV's equipment as may be evidenced by the recordings are critical evidentiary elements in rebuttal to any claim by HART asserting a claim for "defect" or "default". Therefore, SV's position in this proceeding will be directly and negatively affected by HART's improper disposition of SV's equipment or other actions, such as ripping out or removing the units installed on each vehicle without proper and full protection of the equipment and preservation of the recordings.

46.     Plaintiff has no adequate remedy at law. Defendant HART's actions in breach of the Agreement and its interference with Plaintiff's contractual rights will continue to cause Plaintiff irreparable harm without intervention and oversight by the Court. For the above and foregoing reasons, Plaintiff seeks the immediate issuance of a preliminary injunctive order against Defendant HART directing it to cease and desist from such activities that are contrary to the express terms of the Agreement and applicable law.

47.     Injunctive relief is necessary to preserve the status quo between the parties and curtail further irreparable harm pending a final trial of the issues presented herein.

48.     Unless Defendant HART and those under its control are temporarily enjoined, SV will be irreparably injured, suffer loss and damage, which would include future unascertainable economic loss at this time. Unless Defendant HART and those under its control are temporarily enjoined, SV will have no adequate remedy at law. Additionally, such harm is imminent because, upon information and belief, there is evidence that if injunctive relief is not issued, Defendants HART and those under its control will soon engage in conduct such as ripping or

negligently removing the several hundred units of equipment from the vehicles which will, in all likelihood, result in further irreparable damage to SV.

## VI.

## ATTORNEY'S FEES

49. HART's conduct as alleged above has made it necessary for SV to employ the undersigned attorneys to represent it in this lawsuit, thus entitling SV to recover its reasonable and necessary attorneys' fees in this action under the Agreement, for which amount it herein sues. Additionally, and in the alternative, if declaratory relief becomes necessary, SV requests that it be awarded its costs and reasonable and necessary attorney's fees.

## VII.

## CONDITIONS PRECEDENT

50. All conditions precedent to SV's right to recover as herein alleged, if any, have been performed, have occurred or have been waived.

## VIII.

## JURY DEMAND

51. SV requests a trial by jury and tenders the appropriate fee with this Petition or Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Safety Vision, LLC prays that the Court grant the following relief:

1. Upon notice and hearing, enter a temporary injunctive order against HART that: a) requires Defendant HART to immediately cease taking any action to remove any of the equipment installed on the vehicles without proper oversight by a neutral 3rd party to take the necessary steps to protect and preserve the equipment at the cost and expense of HART; b)

require HART to provide a sworn and detailed inventory of all the equipment, supporting said statement with still photographs and video showing the details of the equipment as situated on each vehicle, including its present condition; c) requires HART to immediately make full and complete duplicate copies of any audio and video recordings or other electronic material that existed as of November 1, 2019 that derived from or include SV's equipment and recorders showing that the video surveillance equipment that HART had the full benefit, use and enjoyment of dating back to the first installation in April 2019, did in fact capture evidence of individuals caught in the act of committing a crime and usage by public law enforcement[5] ; and d) prohibiting HART from further interference of SV's contractual rights. Plaintiff seeks such relief pending further hearing on this matter and further order of this Court;

2. And that upon final trial hereon, SV have and recover judgment for the damages, declaratory relief, further injunctive relief, attorney's fees, costs of court, prejudgment and post-judgment interest at the maximum lawful rates; and

3. Award Plaintiff such other and further relief to which it may be justly entitled.

Respectfully submitted

/s/  *Patrick J. McGettigan*
Patrick J. McGettigan
Tx. State Bar No. 13624500
Federal  I.D.  * *Applied for Admission*
13625 Ronald Reagan Blvd.
Building One, Suite 100
Cedar Park, Texas   78613
512-476-1121 Telephone
512-748-8371 Mobile
512-476-1131 Facsimile
pmcgettigan@inhousegc.com

AND

---

[5] This evidence would show that HART was not having any issue with the usage of the installed equipment on more than 280 vehicles, and, in fact, the installed equipment items were serving the purpose and intent of the parties to the Contract.

*/s/ Stefan R. Grow*
Stefan R. Grow
Florida Bar No. 93585
Seann M. Frazier
Florida Bar No. 971200
Parker, Hudson, Rainer & Dobbs, LLP
215 South Monroe Street, Suite 750
Tallahassee, Fl. 32301
850-629-0575 Direct
850-681-0191 Office
sgrow@phrd.com
sfrazier@phrd.com

ATTORNEYS FOR PLAINTIFF,
SAFETY VISION, LLC
*Trial Counsel*